UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EUGENE HABICH,

Plaintiff,

v

WAYNE COUNTY, and JOHN DOE
SHERIFF DEPUTIES #1 AND #2,

Defendants.

Case No:

Hon.

JURY TRIAL DEMANDED

_____/

Elizabeth A. Downey (P37036)
Elizabeth A. Downey, PLLC
Attorney for Plaintiff
30445 Northwestern Hwy., Ste. 250
Farmington Hills, MI 48334
(248) 539-7407
attylizdowney@aol.com

## COMPLAINT

Plaintiff states:

## JURISDICTION AND VENUE

1.      Plaintiff owns his home and resides in Romulus, Michigan.

2.      Defendant Wayne County is a state subdivision located in the Eastern

District of Michigan.

3.      John Doe Sheriff Deputies #1 and #2 are two uniformed officers of the

Wayne County Sheriff's Department.

4.      Jurisdiction is based on 28 U.S.C. §1331 and §1343, as the case sounds in violation of civil rights under 42 U.S.C. §1983.

## COMMON ALLEGATIONS

5.      Plaintiff bought a decommissioned police car for his personal use, and use in a security business.

6.      The car still had police-style lights attached to the body, but no blue lights.

7.      In the early morning hours of July 30, 2020 Plaintiff was driving the car on his way to work, merging from I94 to I275 when he saw a red pickup truck cut across several lanes of traffic and pass him.  Later on I275, Plaintiff passed the pickup.  The pickup changed lanes, and tailgated him at about five feet.  After about a mile, Plaintiff turned on rear lights to get the pickup to back off.  Instead, the pickup moved even closer to Plaintiff.  Plaintiff hit his brakes and moved into the middle lane to avoid the pickup.  The pickup moved next to Plaintiff's car and the driver flashed a badge.  The pickup then moved into Plaintiff's lane; when Plaintiff changed lanes, so did the pickup.  The driver was on a cell phone at the time.  When Plaintiff left the freeway, the pickup followed him.  Eventually the pickup stopped following him and Plaintiff continued to work.

8.    Two days later (August 1, 2020), Plaintiff parked the car in the driveway in Romulus, Michigan, on the side of the house near the side door.  The white car is the decommissioned police car at issue:



9.    At around 7:30 p.m., two Wayne County Sheriff's Deputies (Defendants John Doe #1 and #2) parked in front of Plaintiff's home,  and walked up his driveway.

10.    The two deputies refused to identify themselves or give Plaintiff cards with their identifying information, claiming that they did not have cards.

11.    John Doe #1 told Plaintiff he was taking his car, but did not tell him why.

12.  John Doe #1 demanded that Plaintiff give him the keys or he would drag the car away.  Plaintiff, under protest, surrendered the keys to him to avoid having the car damaged.

13.  John Doe #1 said that the car was "illegal."  When Plaintiff asked why, John Doe #2 said that it had "police lights." Plaintiff pointed out that there were no blue lights.  John Doe #2 then said that it had a camera system.  Plaintiff objected that many people now have dashcams.  John Doe #2 said that there was a Computer Aided Dispatch system still in the car; but in fact, the computer in the car was only attached to the camera system.

13.  John Doe #2 started to question Plaintiff, but would not show a warrant or explain what was going on.

14.  Plaintiff asked to retrieve his property from the car before it was seized. Defendant John Doe #1, who had the keys, agreed to let him do so and unlocked the car.  But when Plaintiff opened the driver's door, Defendant John Doe #1 insisted that he had to search the interior of the car first.  They did so, but found nothing illegal.  But when the John Doe Defendants saw that Plaintiff was removing video equipment, they seized three video cards (memory cards) containing the videographic images.  Both John Doe defendants told Plaintiff that the memory cards were being held as evidence in an investigation.

4

15.    Plaintiff demanded a case number to track the seized property, but John Doe #1 denied that any case number existed.  Plaintiff then demanded an incident number, but John Doe #1 denied that there was any such number.

16.    Plaintiff demanded a receipt, but none was given.

17.    A tow truck arrived and took the car away.  John Doe #1 got a card from the tow truck driver, wrote on the back, and gave it to Plaintiff:

 

18.    The Wayne County Sheriff's Department did not return a phone call seeking further information.

19.    Plaintiff's Counsel filed a Freedom of Information Act request for all documentation regarding the incident.  Wayne County responded on August 31, 2020.   Wayne County produced evidence that the Sheriff did, indeed, seize Plaintiff's car and memory cards from his camera.  According to the paperwork (or lack thereof):

a)      the car was impounded as "evidence" in connection with an "arrest" for impersonating a police officer.  In fact, no such arrest has been made.

b)      the property is not being "forfeited."

c)      the memory cards are currently "confiscated" and are being held for "future investigation."

d)      no warrant was sought or obtained.

e)      no receipt or citation was given to Plaintiff.

f)      no one gave Plaintiff any information on how to get his property back, or on any deadlines for any action to get his property back.

20.    The documents produced in response to the FOIA request redacted the names of John Doe #1 and John Doe #2.

21.    The response included a copy of the written policy of the Wayne County Sheriff's Department concerning impounded vehicles (attached as Exhibit 1).  That policy does not include a requirement to seek a warrant or to document exigent circumstances making it impracticable to obtain a warrant.  The policy does not require the Sheriff's office to give the owner a receipt, to tell the owner how to redeem the vehicle or what deadlines it will follow in disposing of the vehicle, or how to appeal such an impoundment.

22.    To date, Defendants have not returned any of Plaintiff's property or told him how to get it back.

23.   To date, Defendants have not claimed that the property is being forfeited, nor followed any of the procedures set forth in MCL 333.7523 regarding forfeitures.

24.   Plaintiff has suffered damages from the illegal search and seizure, including loss of his property, the cost of arranging other transportation, mental anguish, humiliation, annoyance, and frustration.

### COUNT I – VIOLATION OF FOURTH AMENDMENT BY DEFENDANTS JOHN DOE #1 AND JOHN DOE #2

25.   Plaintiff incorporates by reference paragraphs 1-24.

26.   Defendants John Doe #1 and John Doe #2 were acting under color of law on August 1, 2020, when they searched and seized Plaintiff's property.

27.   Defendants John Doe #1 and John Doe #2 violated the Fourth Amendment to the Constitution of the United States, as applied to the states through the Fourteenth Amendment, in at least the following ways:

      a.   Seizing the car without a warrant or exigent circumstances;

      b.   Seizing property from within the curtilage of Plaintiff's home without a warrant or exigent circumstances;

      c.   Searching the car without an arrest, a warrant, or exigent circumstances;

      d.   Searching a car within the curtilage of Plaintiff's home without a warrant or exigent circumstances;

     e.     Seizing property from within the car in the curtilage of Plaintiff's home without a warrant or exigent circumstances.

28.     Any reasonable officer knows that property may not be searched or seized without either a warrant or exigent circumstances, and particularly from the curtilage of a private home. Defendants John Doe #1 and John Doe #2 acted at least recklessly, with callous indifference to Plaintiff's rights.

29.     Plaintiff has suffered damages from the seizure of his property, including loss of the property itself, costs and efforts to obtain other transportation, and mental anguish, annoyance, and frustration.

30.     Under 42 U.S.C.§1983 and§1988, Plaintiff seeks:

     a.     Injunctive relief to have his property returned intact;

     b.     Monetary damages;

     c.     Punitive damages;

     d.     Costs and attorney fees.

WHEREFORE, Plaintiff requests an order requiring Defendants to immediately return all of Plaintiff's property, and for damages and punitive damages in excess of $25,000, plus costs and attorney fees.

## COUNT II – VIOLATION OF FOURTEENTH AMENDMENT
## BY DEFENDANTS JOHN DOE #1 AND JOHN DOE #2

31.     Plaintiff incorporates by reference paragraphs 1-24.

32.     Defendants John Doe #1 and John Doe #2 were acting under color of law on August 1, 2020, when they seized Plaintiff's property.

33.     The seizure of the property was not authorized by a warrant, nor by any of the circumstances set forth in MCL 600.4703:

(2) Personal property subject to forfeiture under this chapter may be seized without process under any of the following circumstances:

(a) The property is the proceeds of a crime, the substituted proceeds of a crime, or an instrumentality of a crime and the seizure is incident to a lawful arrest. [There was no arrest here.]

(b) The seizure is pursuant to a valid search warrant. [There was no search warrant here.]

(c) The seizure is pursuant to an inspection under a valid administrative inspection warrant. [There was no administrative search warrant here.]

(d) There is probable cause to believe that the property is directly or indirectly dangerous to health or safety. [As a police department sold the vehicle as it was, there was no direct or indirect danger to health or safety.]

(e) Exigent circumstances exist that preclude the obtaining of a court order, and there is probable cause to believe that the property is subject to forfeiture under this chapter. [There were no exigent circumstances, as Defendant tracked down the Plaintiff's address and looked for the car; in that time, they could have sought a warrant.  Moreover, there was no probable cause to believe that the property was subject to forfeiture, and the Defendants did not seize the property under the forfeiture act.]

(f) The property is the subject of a prior judgment in favor of this state in a forfeiture proceeding. [There was no prior judgment here.]

34.    Any reasonable officer would know that seizing property without process without any of the circumstances set forth above violated due process. Defendants John Does #1 and #2 acted at least recklessly, with callous indifference to Plaintiff's rights in failing to provide any pre-deprivation process.

35.    Defendants John Doe #1 and John Doe #2 deliberately avoided declaring the property as "forfeited" in order to deprive Plaintiff of the due process provided by Michigan law for seizure of property under the forfeiture statute. Instead, they referred to the property as "impounded" or "confiscated" pending investigation (which may or may not ever happen).

36.    Defendants John Doe #1 and John Doe #2 violated the due process clause of the Fourteenth Amendment to the Constitution of the United States in at least the following ways:

a.    Failing to provide Plaintiff with a copy of a warrant or other legal authority for seizing his property;

b.    Failing to provide Plaintiff with predeprivation process, even knowing that it intended to seize the property before arriving at the location;

c.    Failing to provide adequate postdeprivation process in at least the following ways:

i) failing to declare a forfeiture so as to invoke the due process procedures provided by Michigan law;

ii) failing to explain to Plaintiff whether his property was being impounded or forfeited;

iii) failing to explain to Plaintiff whether his property was being held indefinitely as evidence of some sort of investigation, whether it was being "confiscated," or whether it will be disposed of under some departmental policy;

iv) failing to provide Plaintiff with a copy of its policy regarding the handling of seized vehicles;

v)   failing to provide notice of any policy or method followed by the County for Plaintiff to retrieve his property;

vi) failing to provide Plaintiff with any means of promptly appealing the illegal seizure of his property.

viii) failing to provide Plaintiff with notice of any means of appealing the illegal seizure of his property.

37.   Any reasonable officer knows that due process requires notice of the action being taken and a reasonable opportunity to be heard by an impartial factfinder.  Defendants John Doe #1 and John Doe #2 acted at least recklessly, with callous indifference to Plaintiff's rights by refusing to answer his questions about his property and deliberately keeping him in the dark as to what was being done with the property and how he could be heard on the matter.

38.   Plaintiff has suffered damages from the seizure of his property, including loss of the property itself, costs and efforts to obtain other transportation, and mental anguish, humiliation, annoyance, and frustration.

WHEREFORE, pursuant to 42 U.S.C.§1983 and§1988, Plaintiff seeks:

a.   Injunctive relief to have his property returned intact;

b.   Monetary damages in excess of $25,000;

c.      Punitive damages;

d.      Costs and attorney fees.

## COUNT III – LIABILITY OF WAYNE COUNTY

39.    Plaintiff incorporates by reference paragraphs 1-38.

40.    Defendant Wayne County is a charter county in the State of Michigan; as such, it is a corporate body capable of being sued.

41.    The Wayne County Sheriff's Department is a department of the government of Defendant Wayne County.

42.    Wayne County is liable for the acts of Defendants John Doe #1 and John Doe #2 because they purported to act under the policy set forth in Exhibit 1. That policy is inadequate and unconstitutional because:

a.      it does not prohibit officers from seizing evidence without a warrant, in the absence of exigent circumstances;

b.      it does not prohibit officers from seizing evidence within the curtilage of a home;

c.      it does not require officers to provide property owners with a copy of a warrant or other legal authority for seizing the property impounded as evidence;

d.      it does not require officers to give property owners a receipt for property impounded as evidence;

e.      it does not require officers to explain to property owners whether their property is being impounded or forfeited;

f.      it does not require officers to explain to property owners whether property impounded or held or confiscated rather than being "forfeited"

12

will be held indefinitely as evidence of some sort of investigation, or whether it will be disposed of under some departmental policy;

g.     it does not require officers to provide property owners with a copy of its policy regarding the handling of seized vehicles;

h.     it does not require officers to provide notice of any policy or method followed by the County for property owners to retrieve their property.

i.     it does not provide property owners with any means of promptly appealing the illegal seizure of their property that is impounded or held for investigation rather than being forfeited.

j.     it fails to provide property owners with notice of any means of appealing the illegal seizure of their property, if the property is not forfeited but nevertheless seized.

43.     Notwithstanding any written policy, upon information and belief, the Wayne County Sheriff's Department has long followed an unwritten practice constituting a *de facto* policy of seizing vehicles without warrants and/or without exigent circumstances and/or in the curtilage of homes.

44.     The deprivations of civil rights perpetrated by Defendants John Doe #1 and John Doe #2 were caused by the written and/or *de facto* policies of the Wayne County Sheriff's Department, and thus Defendant Wayne County.

45.     These deprivations of civil rights caused Plaintiff damages, including loss of his property, costs of arranging alternative transportation, mental anguish, humiliation, annoyance, and frustration.

WHEREFORE, pursuant to 42 U.S.C. §1983, Plaintiff seeks return of his property and damages in excess of $25,000.  Pursuant to 42 U.S.C. §1988, he also seeks costs and attorney fees incurred.

Respectfully Submitted,

/s/ Elizabeth A. Downey
Elizabeth A. Downey (P37036)
Elizabeth A. Downey, PLLC
Attorney for Plaintiff
30445 Northwestern Hwy., Ste. 250
Farmington Hills, MI 48334
(248) 539-7407
attylizdowney@aol.com

September 14, 2020

## JURY DEMAND

Plaintiff demands a jury trial on all issues triable by jury.

Respectfully Submitted,

/s/ Elizabeth A. Downey
Elizabeth A. Downey (P37036)
Elizabeth A. Downey, PLLC
Attorney for Plaintiff
30445 Northwestern Hwy., Ste. 250
Farmington Hills, MI 48334
(248) 539-7407
attylizdowney@aol.com

September 14, 2020

# EXHIBIT 1

## TO COMPLAINT

# WAYNE COUNTY SHERIFF

| Effective Date:<br>APRIL 3, 2006 | Review Date:<br>ANNUAL | Policy and Procedure:<br>ABANDONED/IMPOUNDED<br>VEHICLES | |
|---|---|---|---|
| Special Instructions:<br>SUPERCEDES ALL DEPARTMENT AND DIVISIONAL POLICIES<br>ON ABANDONED/IMPOUNDED VEHICLES | | | Policy Number:<br>3720 |

## STATEMENT

State law defines abandoned and impounded vehicles and law enforcement responsibilities related to the enforcement of those laws. The purpose of this policy is to define the law and establish procedures to compliment the law regarding the reporting and removing of vehicles from public and private property.

## POLICY

Frequently, officers become involved with vehicles that are abandoned, or have a need to secure or impound a vehicle. It is the policy of the Wayne County Sheriff's Office that vehicles, which come into custody, are processed in accordance with state law and detailed records are maintained.

## DEFINITIONS

**Abandoned Vehicle:** a vehicle that was left on:
- Private property without the property owner's consent.
- Public property (including county roads and city streets) for at least 48 hours.
- A state road (e.g. M-99, U.S. 23, I-96) for at least 18 hours if a valid registration plate is on the vehicle.
- A state road for any period of time if a valid registration plate is not on the vehicle.

**Business Days:** Monday through Friday, excluding weekends and holidays.

**Custodian:** the person or business/legal entity responsible for storing an abandoned vehicle taken into custody. Usually, this is the towing company.

**Disposition:** the final arrangement for an abandoned vehicle.

ABANDONED/IMPOUNDED VEHICLES

**Impounded Vehicle**: a vehicle that was removed to a place of safekeeping because it was illegally parked, is stolen or contains stolen parts, is being used as evidence or was used in a crime, or is a hazard or obstruction to safety and traffic.

**Impounded Vehicle Report**: a tow tag documenting the description of the vehicle and information to the incident.

**LEIN**: Law Enforcement Information Network – a computer network used by law enforcement agencies to exchange information.

**Owner of Record**: the person named on the Secretary of State's motor vehicle records as the title-holder or registrant of the vehicle.

**Record of Sale**: a photocopy of the reassigned title or a document that includes the name, address, driver's license number and signature of the person to whom the vehicle was sold, along with the purchase price and date of sale.

**Redeemed**: the owner or a secured party has paid all fees and charges and obtained release of the vehicle from the custodian.

**Registered Abandoned Scrap Vehicle**: vehicle is abandoned, at least 7 years old, is inoperable or extensively damaged so that repairing it for safe operation exceeds the fair market value, and is currently registered or titled in Michigan or has current-year registration plates from another state.

**Secretary of State Website**: www.service.sos.state.mi.us/autolostandfound

**Tagged Vehicle**: a vehicle with a written notice affixed by a law enforcement agency. The written notice served as a warning that the vehicle is subject to being taken into custody at the owner's expense or crapped.

**Tow Tag**: an impounded vehicle report documenting the description of the vehicle and information to the incident.

**Unregistered Abandoned Scrap Vehicle**: is abandoned, at least 7 years old, is inoperable or extensively damaged so that repairing the vehicle for safe operation exceeds the fair market value, and is not currently registered in Michigan or does not display current-year registration plates from another state.

**Vehicle**: for the purposes of this policy, vehicle shall mean automobile

## PROCEDURE

### VEHICLES INVOLVED IN A CUSTODIAL ARREST:

1. Release to passenger - When the driver of a vehicle is arrested and will be separated from his/her vehicle, a properly licensed passenger shall be allowed to take custody of the vehicle (with authorization of the driver) as long as the passenger would not violate any law by doing so. The driver's authorization must be included in the officer's report and the driver must sign the appropriate waiver. (This section does not apply when the vehicle is being seized as evidence.)

2. Vehicles on limited access highways - If a vehicle is not turned over to a passenger or immediate removal cannot be arranged, the vehicle shall be inventoried and impounded.

3. Vehicles on non-limited access highways -

   a. When a vehicle is lawfully parked and not turned over to a passenger, the officer shall offer to call a wrecker to remove the vehicle for safekeeping. If the driver declines, he/she will be presumed to have assumed the risk for any claims of loss or damage that may arise and the vehicle shall be left at the scene. If the driver does not want the vehicle removed, the officer shall indicate that in the report and the driver must sign the appropriate waiver.

   b. If the vehicle is parked so as to create an immediate public hazard or an obstruction to traffic and immediate removal cannot be arranged; the vehicle shall be inventoried and impounded as provided by this policy.

### REGISTERED ABANDONED VEHICLE (officer initiation): The following initial investigative steps shall be adhered to if an officer believes a vehicle to be abandoned:

1. The officers shall physically check every vehicle believed to be abandoned.

ABANDONED/IMPOUNDED VEHICLES

3. If the vehicle has not been reported stolen, the officer shall affix an Abandoned Vehicle Tag containing the following information:

   a. The date and time the notice was affixed.

   b. The department's name and address.

   c. The officer's name and badge number.

   d. The date and time the vehicle may be taken into custody and stored at the owner's expense, or scrapped if it isn't moved.

   e. The year, make and vehicle identification number, if available.

4. If the vehicle has not been removed within 48 hours after the Abandoned Vehicle Tag has been affixed, the vehicle is deemed abandoned and may be taken into custody.

**REGISTERED ABANDONED VEHICLE (citizen initiation via tow company):**
The following initial investigative steps shall be adhered to if a citizen directly contacts a tow company to tow an abandoned vehicle:

1. If a citizen contacts the department regarding an abandoned vehicle on their personal property. The citizen will be advised to contact the primary local law enforcement agency to make their complaint and tow request pursuant to State law. No officer shall make any recommendation for utilization of a particular tow company.

2. If the LEIN verifies that the vehicle is stolen, the department will advise the tow company that an officer will respond to the location to take the citizen's complaint. The tow company or the complaining citizen shall not be advised of the stolen status of the vehicle.

3. If the LEIN verifies that the vehicle is not stolen, the tow company shall tow the vehicle. Dispatch shall be contacted, given the information and the vehicle will be entered into LEIN as abandoned.

4. Once the tow company tows the vehicle, the company shall provide the department with the following information: date and time of tow, citizens name, address, citizens drivers license number, vehicle year, vehicle make, vehicle model, vehicle color, Vehicle Identification

ABANDONED/IMPOUNDED VEHICLES

**REGISTERED ABANDONED VEHICLE TAKEN INTO CUSTODY:** The following steps of reporting and towing shall be followed:

1. Recheck both the registration, plate, and the VIN through LEIN to determine if the vehicle has been reported stolen.

2. Inventory the vehicle according to policy.

3. The officer will inform the LEIN operator that the vehicle is being impounded. The LEIN operator will provide the officer with the LEIN reference number. Within 24 hours, Dispatch shall notify The Michigan Secretary of State (S.O.S.) via LEIN that a vehicle has been impounded as abandoned and provide all of the necessary information as enumerated in MVC257.252a.

4. The officer will request a tow truck through Dispatch.

5. Once the tow company has taken the vehicle into custody, the officer shall conduct a second LEIN check.

6. The officer shall complete the Impoundment Vehicle Report (tow tag), which includes the LEIN reference number, reason for impound, departmental case number, vehicle information, name of officer, name of tow company and driver, location of impoundment, and all other required information requested on the Impounded Vehicle Report/Tow Tag. The vehicle inventory section of the Impounded Vehicle Report/Tow Tag shall be completed and inventory form, where applicable.

7. The officer shall provide the tow company driver with the appropriate copy of the Impounded Vehicle Report/Tow Tag.

8. The officer shall complete an Incident Report (PJ-83) with a copy of the Impounded Vehicle Report/Tow Tag and submit it to the supervisor for approval.

9. The reports shall be distributed according to divisional policy, including the Detective Bureau, if a criminal charge is involved.

10. The officer will give the original Impounded Vehicle Report/Tow Tag to the designated Impound Officer to file in the Impounded Vehicles File Box. And enter into the database.

ABANDONED/IMPOUNDED VEHICLES

court petition to the last title owner and to any secured party notifying that the vehicle has been reported abandoned and taken into custody.

12. A pre-printed (TR-52) Bill of Sale document will be sent to the department. After the TR-52 has been sent by the Secretary of State, verifying notification of the owner, if the vehicle has not been redeemed, or a hearing has not been requested, not less than twenty (20) days, the vehicle shall be offered for public sale.

13. Changes in the disposition of vehicles will be updated on the abandoned vehicle website by the Secretary of State.

**STATUS OF REGISTERED ABANDOND VEHICLES:** A periodic check of the status of the vehicle shall be made by the initial investigating officer or the designated officer.

1. When the incident is reviewed within 7 days, contact the custodian (tow company) of the vehicle to determine whether the vehicle has been redeemed.

2. When a hearing has been requested, recheck with the custodian (tow company) of the vehicle, not less than 20 days after the disposition of the hearing. At that time, if the vehicle has not been redeemed, dispose of the vehicle in accordance with policy.

3. If at any time the owner or secured party redeems the vehicle, the case shall be closed.

**UNREGISTERED ABANDONED VEHICLES:** The following initial investigative steps shall be followed:

1. An officer shall physically check every vehicle believed to be abandoned.

2. A LEIN check shall be conducted to determine if the vehicle has been reported stolen. Checks shall be made on the registration, plate, and the VIN.

3. The officer shall affix an Abandoned Vehicle Tag to the vehicle when first checked.

4. If the vehicle has not been removed within 48 hours, the vehicle is

ABANDONED/IMPOUNDED VEHICLES

1. Recheck the registration, plate, and the VIN through LEIN to determine if the vehicle has been reported stolen.

2. Inventory according to policy.

3. The officer will inform the LEIN operator that the vehicle is being impounded as an abandoned vehicle. The LEIN operator will provide the officer with the LEIN reference number, which shall be included in all reports. Within 24 hours Dispatch shall notify the Michigan Secretary of State (S.O.S.) via LEIN that a vehicle has been impounded as abandoned and provide all necessary information as enumerated in MVC257.252a.

4. The officer will request a tow truck to be dispatched.

5. Once the tow company has taken the vehicle into custody the officer shall conduct a second LEIN check.

6. The officer shall complete the Departmental Impounded Vehicle Report/Tow Tag, which includes the LEIN reference number, reason for impound, departmental case number, vehicle information, name of officer, name of tow company and driver, location of impoundment, and all other required information requested on the Impoundment Report. The vehicle inventory section of the Impounded Vehicle Report/Tow Tag shall be completed.

7. The officer shall provide the tow company driver with the appropriate copy of the Impounded Vehicle Report/Tow Tag.

8. The officer shall complete an Incident Report (PJ-83) with a copy of the Impounded Vehicle Report/Tow Tag and submit it to the supervisor for approval.

9. The officer shall distribute the PJ-83 and Impounded Vehicle Report/Tow Tag according to divisional policy.

10. The officer shall give the original of the Impounded Vehicle Report/Tow Tag to the designated officer to be filed the Impounded Vehicles File Box and entered into the database.

11. A pre-printed (TR-52) Bill of Sale document will be sent to the

ABANDONED/IMPOUNDED VEHICLES

REGISTERED IMPOUNDED VEHICLES: The following initial investigative steps shall be followed:

1. An officer shall physically check the vehicle prior to removal.

2. Check through LEIN to determine if the vehicle has been reported stolen. Checks will be made on the registration, plate, and the VIN.

3. Within 24 hours enter the vehicle into LEIN as an impounded vehicle (except if towed from accident scene).

4. The officer will request a tow truck to be dispatched.

6. The officer will complete the Departmental Impounded Vehicle Report /Tow Tag, which includes LEIN reference number, reason for impound, departmental case number, vehicle information, name of officer, name of tow company and driver, location of impoundment, vehicle inventory and all other requested information on the Impoundment Report. The tow truck driver shall sign the officer's copy of the tow tag.

7. The officer will provide the tow company driver with the appropriate copy of the Impounded Vehicle Report/Tow Tag.

8. The officer shall complete an Incident Report (PJ-83) with a copy of the Impounded Vehicle Report/Tow Tag and submit it to the supervisor for approval.

9. If criminal charges are being sought, the officer will provide all appropriate documents to the designated person.

STATUS OF REGISTERED IMPOUNDED VEHICLES: The designated officer shall check on the status of the vehicle with the custodian of the vehicle not less than 20 days after the date of written notice to see if the vehicle has been redeemed.

1. If the vehicle has not been redeemed, the designated officer shall contact the court of jurisdiction to determine whether a hearing has been requested.

   a. If no hearing has been requested, after 30 days the vehicle

of the vehicle not less than 20 days after the disposition of the hearing. At that time, if the vehicle has not been redeemed, dispose of the vehicle in accordance with this policy.

UNREGISTERED IMPOUNDED VEHICLES: The following initial investigative steps shall be followed:

1. An officer shall physically check the vehicle prior to removal.

2. Check through LEIN to determine if it has been reported stolen. Such checks will be made on the registration, plate, and the VIN.

3. The officer will request a tow truck to be dispatched.

4. The officer will complete the Departmental Impoundment Vehicle Report (tow tag), which includes LEIN reference number, reason for impound, departmental case number, vehicle information, name of officer, name of tow company and driver, location of impoundment, and all other requested information requested on the Impoundment Report. The vehicle inventory section of the Impounded Vehicle Report/Tow Tag shall also be completed in its entirety or inventory form, where appropriate.

5. Submit an Incident Report (PJ-83) and an accident report if towed from the scene of an accident. No property receipt is needed.

6. Enter the vehicle, into LEIN, without undue delay, as an impounded vehicle.

7. The vehicle shall be sold at auction as per Policy.

NOTIFICATION OF OWNER – REGISTERED IMPOUNDED VEHICLES: The owner or operator of the vehicle shall be informed of the removal and the location of the vehicle, by phone or personal contact within 24 hours. This notification shall be noted on the incident report.

1. If the owner or operator was notified within 24 hours and upon complaint of the towing service that the vehicle was not redeemed within 30 days, the LEIN of the vehicle shall be changed to abandoned except for any vehicle held for evidence or involved with criminal activity or court proceedings. These vehicles shall not be changed to

| ABANDONED/IMPOUNDED VEHICLES |
| --- |

    a. When the vehicle was taken into custody as the result of an accident, submit an Accident Report, UD-10, on the vehicle abandonment at this time.

**REGISTERED ABANDONED SCRAP VEHICLE:**   The following initial investigative steps shall be followed:

1. The officers shall physically check every vehicle believed to be abandoned.

2. A check through LEIN shall be conducted to determine if the vehicle has been reported stolen.   The check shall be made on the registration, plate, and the VIN.

3. If the vehicle has not been reported stolen, the officer shall affix an Abandoned Vehicle Tag containing the following information:

    a. The date and time the notice was affixed.

    b. The department's name and address.

    c. The officer's name and badge number

    d. The date and time the vehicle may be taken into custody and stored at the owner's expense, or scrapped if it isn't moved.

    e. The year, make and vehicle identification number, if available.

4. If the vehicle has not been removed within 48 hours after the Abandoned Vehicle Tag has been affixed the vehicle is deemed abandoned and may be taken into custody.

**REGISTERED ABANDONED SCRAP VEHICLE – CUSTODY:** An officer taking a registered abandoned scrap vehicle into custody shall follow the below listed towing and reporting procedures:

1. Recheck the registration, plate, and VIN through LEIN.

2. Take two photographs of the vehicle showing both sides and both ends of the vehicle.  Be sure that the picture includes the entire vehicle from end to end.

4. The officer will complete the Departmental Impounded Vehicle Report/Tow Tag, which includes LEIN reference number, reason for impound, departmental case number, vehicle information, name of officer, name of tow company and driver, location of impoundment, vehicle inventory and all other requested information requested on the Impounded Vehicle Report/Tow Tag.

5. The officer will provide the tow company driver with the appropriate copy of the Impounded Vehicle Report/Tow Tag.

6. The officer will attach the yellow copy of the Impounded Vehicle Report/Tow Tag to their report (PJ-83) and submit it to the supervisor for approval.

7. If criminal charges are being sought, the officer will provide all appropriate documents and a copy of the Impounded Vehicle Report/Tow Tag to the designated person.

8. Submit (PJ-83) incident report. No property receipt is needed.

9. Without undue delay, the vehicle shall be entered into LEIN as an abandoned vehicle.

10. Within 7 days, The Secretary of State (SOS) will make the information available on the abandoned vehicle website and also send a notice and court petition to the last titled owner and a notice to any secured party that the vehicle has been reported abandoned and taken into custody.

11. A pre-printed Abandon Vehicle Bill of Sale/Certificate of Scrapping (TR-52) document will be sent to law enforcement, not less than twenty (20) days after the TR-52 has been sent by the Secretary of State, if the vehicle has not been redeemed, or a hearing has not been requested, the vehicle shall be offered for public sale.

## DISPOSITION OF AN ABANDONED SCRAP VEHICLE:

1. Release to owner,

   a. The owner may obtain release of the vehicle by paying the

ABANDONED/IMPOUNDED VEHICLES

    b. The owner may post a bond with the court to secure the release of the vehicle if the owner contests the vehicle being taken into custody or the reasonableness of the towing and storage fees. Vehicle bonds will not be accepted by the department and must be posted with the court.

    c. When the owner redeems the vehicle, cancel the LEIN entry and the incident may be closed.

2. Release to Secured Party.

    a. Verify that the 20 days has elapsed from the date of the TR-52 notice.

    b. Determine that the owner has not redeemed the vehicle.

    c. Determine that the owner has not requested a hearing with the court.

    d. Complete and distribute the Bill of Sale portion of the TR-52 form.

    e. Cancel the LEIN entry and close the incident.

3. Sale at Auction.

    a. Unclaimed vehicles (except abandoned scrap) shall be sold at public auction after a notice has been published.

    b. One notice shall be placed in the designated newspaper (having general circulation within the county in which the vehicle was taken into custody) showing date, time and place of sale and description of the vehicle to be auctioned.

    c. The vehicle shall be sold at a public auction consisting of open auction bidding. It shall be conducted by the Sheriff or agent who has custody of the Vehicle.

        i. Registered vehicles may be sold at auction not less than 5 business days after public notice of the sale has been published.

ABANDONED/IMPOUNDED VEHICLES

    e. A departmental receipt shall be issued.

4. If there are no bidders on the vehicle, the vehicle shall be disposed of as follows:

    a. Turn the vehicle over to the towing firm to satisfy charges against the vehicle.

    b. Hold another public sale.

    c. The vehicle code allows police agencies to obtain title to vehicles if no one has bid at the auction.

    d. Employees of the Wayne County Sheriff's Office cannot purchase auctioned vehicles.

5. Upon transfer of the ownership of the vehicles complete and distribute the Bill of Sale portion of the TR-52.

6. Cancel the LEIN entry and close the incident.

## DISTRIBUTION OF MONEY RECEIVED FROM THE PUBLIC SALE SHALL BE MADE IN THE FOLLOWING ORDER OF PRIORITY:

1. Payment of towing and auction charges

2. Expenses for newspaper advertisement

3. Amount of debt outstanding to the secured party, if applicable

## RELEASE OF IMPOUNDED VEHICLES:

1. Vehicles must be released by authorized department personnel only.

    a. Personnel releasing the vehicle will ensure that the holds have been cleared.

    b. Vehicle releases will require:

ABANDONED/IMPOUNDED VEHICLES

    iii. Proof of insurance

## DIVISION AND FINANCE RESPONSIBILITIES

1. All divisions that impound vehicles are required to develop a divisional policy on maintaining records and a database. The policy shall include at a minimum, reports to be utilized, reviewing/approval of reports, distribution of reports, including database report, filing of reports, individuals responsible for filing and computer updating, and individuals responsible to pick up and deliver checks. Most importantly a check and balance system shall be documented between the officer and tow company, check pick up and delivery to Finance. A supervisor above the rank of the designated person shall monitor the process.

2. If a vehicle has been impounded for ten days or more for safekeeping due to an arrest or an accident, the Unit that impounds that vehicle is responsible to change its status to abandoned through Dispatch.

3. All vehicles towed as abandoned shall be entered into a database for record keeping purposes.

4. The designated officer shall be responsible to pick up the checks from the tow company monthly and shall specify on the top left portion of the check the appropriate fund the check should be deposited. The checks must be made out to "Wayne County Sheriff's Office".

5. All checks shall be delivered to the Sheriff's Director of Administration every month, without undue delay, no later than the next business day. The designated officer shall make a copy of the check and provide a detailed list of the impounded vehicles that the check relates to and the unit that impounded the vehicle (i.e. narcotics, MSEU, etc). A receipt shall be given to the designated officer including the amount of the check, tow company, and account number for deposit. The receipt shall be signed by the Finance representative and dated. The division shall maintain a copy of the receipt and check.

6. When abandoned vehicles are sold at auction, a copy of the TR-52 Bill of Sale form shall be kept at the Patrol and Investigation Division and filed appropriately.