UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EUGENE HABICH,

Plaintiff,

v.

Case Number 20-12528
Honorable David M. Lawson

WAYNE COUNTY, JOHN WOJCIECHOWSKI, and CHRISTOPHER MITTLESTAT,

Defendants.
_______________________________________/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING AS MOOT DEFENDANTS' RENEWED MOTION TO STAY PROCEEDINGS AND PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO SUBSTITUTE A PARTY FOR THE DECEASED DEFENDANT, AND DISMISSING AMENDED COMPLAINT WITH PREJUDICE**

Wayne County, Michigan sheriff deputies, investigating a complaint of impersonating a police officer, showed up at the plaintiff's house without a warrant and seized his vehicle, a decommissioned police cruiser, from his driveway. Plaintiff Eugene Habich responded with the present lawsuit under 42 U.S.C. § 1983 in which he contends that the defendants violated his constitutional rights. There is no question that the car was material evidence in the investigation, or that the car was in plain view in the driveway. Habich's claim rises or falls on whether the vehicle was within the curtilage of Habich's home at the time of the warrantless seizure. Both sides agree on the basic facts, and the parties have filed cross motions for summary judgment on this question. Giving Habich the benefit of all reasonable inferences, the governing law says that the answer must be that the car was not within the protection of the curtilage of Habich's home. The defendants' motion for summary judgment will be granted and Habich's motion will be denied. The defendants' motion to stay the case until the underlying criminal prosecution

terminates will be denied, and the plaintiff's motion to extend the time to substitute the estate of the deceased individual defendant will be denied as moot.

I.

The event that prompted the investigation occurred on August 1, 2020. At around 6:20 that morning, Corporal Paul Spaulding of the Washtenaw County Sheriff's Department was driving northbound on I-275 in his private vehicle. He was not in uniform and was on his way to work. Spaulding said that he noticed that the vehicles following him were changing lanes from the left lane into the middle lane, and as the left-lane traffic cleared he saw a white Dodge Charger which appeared to him to be an unmarked police car. The car accelerated and passed Spaulding, who was driving in the middle lane. As the car passed, Spaulding observed what appeared to be "police-type equipment" installed on the car, including "a front push bar, police lights, and various interior devices." Paul Spaulding decl., ECF No. 41-1, PageID.653.

Spaulding changed lanes to follow the car and observe further, and when he was behind the car he saw that it had a "civilian" license plate affixed. Spaulding attested that "[a]t that point, the driver of the Charger flashed the vehicle's rear police lights at me." *Ibid.* Spaulding then changed back to the middle lane and pulled alongside the Charger, at which point he "saw the driver pick up a microphone and then yell something over the vehicle's PA system that was unintelligible because of the road noise." *Ibid.* Spaulding then "took [his] WCSO badge out, displayed it to [the driver], and asked if he was a police officer," and "[u]pon seeing [Spaulding] do this, at that point, the driver then quickly accelerated away at a speed well beyond the speed limit." *Ibid.* Spaulding continued on to work, wrote a report about the incident, and then notified his sergeant, who took over the investigation.

Habich disputes Spaulding's narrative in certain respects, contending that it was Spaulding who was driving "aggressively" and "erratically" during the encounter. However, at his deposition Habich admitted that, while Spaulding was following him on the highway, he "flashed" the car's rear mounted "red and amber" lights, which he characterized as "deck lights." Eugene Habich dep., ECF No. 41-2, PageID.667. Habich also admitted that he saw Spaulding "try to flash a badge." *Id.* at PageID.668. When asked if during the encounter he tried to "blow a horn or make any sound with the car," Habich declined to answer the question upon advice from his counsel. *Ibid.* But Habich believes that Spaulding's narrative of the roadway encounter is "irrelevant" and could not have figured in defendant Deputy Sheriff John Wojciechowski's assessment of the legal grounds for the subsequent seizure of the car, because at his own deposition Wojciechowski admitted that he never read Spaulding's report about the incident.

What followed is not disputed by the parties. Later that day, defendant Wojciechowski (now deceased) was instructed by his supervisor to locate a vehicle belonging to the plaintiff, based on Spaulding's report. Wojciechowski was provided the vehicle registration information, and after a record search he determined that it was owned by plaintiff Eugene Habich. Wojciechowski uncovered several residences associated with the plaintiff, and eventually he arrived at the plaintiff's home at 11563 Olive Street, in Romulus, Michigan. Upon arrival, from his initial vantage point in a public street, Wojciechowski "could see that the car had a push bar and police-style lights." Defendant Deputy Christopher Mittlestat was dispatched as backup and soon arrived on the scene. Both deputies were in uniform and were driving marked Wayne County Sheriff Department vehicles.

Wojciechowski said that the car was "backed into the driveway, with the front of the car even with the front of the house, less than a car's width from the side of the house." Mittlestat

similarly attested that when he arrived the car was visible in the driveway, parked with its headlights facing the street, within "3-4 feet from the side of the house." The plaintiff submitted a photograph — a still taken from "surveillance video" — which shows the car parked beside the house and one of the Wayne County Sheriff's Department vehicles parked in the street in front of the home. Undated Photograph, ECF No. 40-6, PageID.503. It appears to be undisputed that this photograph fairly depicts the actual location of the car in relation to the house when it first was sighted by the defendants.

Both of the individual defendants admitted that it was their intention to impound the car as evidence of possible crimes, and they admitted that their understanding, based on departmental policy, was that no warrant was required to seize a vehicle from a residential driveway if it was clearly visible and not enclosed within a garage or other portion of the home. The deputies walked up the driveway and spoke to the plaintiff and his girlfriend, who were working on the vehicle while it was parked in the driveway. While Wojciechowski spoke with Habich, Mittlestat walked between the car and the house to the back of the car to check the license plate, and from that vantage point he confirmed that the license plate matched the car they were looking for. Wojciechowski then informed the plaintiff that the car would be impounded.

Habich asked to retrieve some items from the car, and Wojciechowski directed Mittlestat to perform a "safety sweep" of the passenger compartment to verify that no weapons or contraband were present. Habich then asked to retrieve some items from the trunk of the car. When the trunk was opened, Habich attempted to pocket some memory cards that he retrieved from a video recorder installed in the trunk, but Wojciechowski told him to stop and surrender the memory cards, which also were seized. Wojciechowski then called Martin's Towing to come to the home and tow the car away. Wojciechowski then gave the plaintiff a business card from Martin's

Towing with handwritten notations on the back stating the name of his supervisor, an incident number, and a phone number.

The Wayne County Sheriff's Department vehicle impound policy states that any vehicle "may be immediately removed from public or private property if certain circumstances are met," including when "the vehicle must be seized to preserve evidence of a crime, or if there is reasonable cause to believe that the vehicle was used in the commission of a crime." Abandoned/Impounded Vehicle Policy dated Jan. 17, 2020, ECF No. 40-9, PageID.520. State law has a similar provision. *See* Mich. Comp. Laws § 257.252d ("A police agency or a governmental agency designated by the police agency may provide for the immediate removal of a vehicle from public or private property to a place of safekeeping at the expense of the last-titled owner of the vehicle in any of the following circumstances: . . . (e) If the vehicle must be seized to preserve evidence of a crime, or if there is reasonable cause to believe that the vehicle was used in the commission of a crime."). It appears that this language does not account for federal rulings that prohibit warrantless seizures of property from the curtilage of a home. The defendants attested that no such distinction was made in their training.

Habich admitted at his deposition that the subject vehicle had the following equipment installed when it was seized: (1) a public address (PA) system, with a loudspeaker mounted behind the front grille, which could relay speech from a microphone accessible to the driver, (2) a siren, and (3) three sets of lights, some mounted on the front push bar, others near the windshield visors in the passenger area, and still others on the "rear deck" inside the rear window. Eugene Habich dep., ECF No. 41-2, PageID.465. Habich also admitted that the lights would flash or blink in a programmed pattern when turned on, and that the front lights would flash red and white colors, and the rear lights would flash red and yellow. *Ibid.*

After the car was seized, Habich sued to get it back, along with the other property in the vehicle. His amended complaint states claims for wrongful seizure of property in violation of the Fourth Amendment and unlawful deprivation of property without due process of law in violation of the Fourteenth Amendment. Early in the case, Habich filed a motion for a preliminary injunction, but the parties worked out an arrangement to return the car and most of the property to Habich, and the motion was withdrawn. In the meantime, the defendants filed a motion to stay the proceedings in anticipation of forthcoming criminal charges. The Court denied that motion because the defendants were not able to say if or when criminal charges would be brought. Earlier this year, though, charges were filed against Habich in Michigan's 35th District Court, and a warrant was issued for his arrest on nine misdemeanor counts: (1) four counts of impersonating a police officer, Mich. Comp. Laws § 750.215, (2) one count of using or possessing flashing lights in a vehicle, Mich. Comp. Laws § 257.698, (3) one count of false use of an unauthorized private investigator's badge, Mich. Comp. Laws § 338.836, and (4) three counts of reckless driving, Mich. Comp. Laws § 257.636. That case remains pending.

The defendants renewed their motion to stay the present action, together with a motion for summary judgment. Habich filed a motion for partial summary judgment on his Fourth Amendment claim. The Court heard oral argument on the motions on April 21, 2022.

## II. Summary Judgment Motions

The fact that the parties have filed cross-motions for summary judgment does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). Instead, the Court must apply the well-recognized summary judgment standard

when deciding such cross motions: the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003); Fed. R. Civ. P. 56(c).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate that no material facts are genuinely in dispute. *Alexander*, 576 F.3d at 558 (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (quotation marks omitted). Instead, that party must designate

specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for" that party. *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet its burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

When challenged, the party who bears the burden of proof must present a jury question as to each element of its claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). It must be emphasized, however, that "[i]n evaluating the evidence, [the court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'" *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (quoting *PDV Midwest Ref., L.L.C. v. Armada Oil & Gas Co.*, 305 F.3d 498, 505 (6th Cir. 2002)).

The parties raised the same arguments both in support of their demands for affirmative relief and in their oppositions to their counterparties' summary judgment motions. They each seek judgment as a matter of law on their own slates of competing claims and defenses.

A. Fourth Amendment Claim

Habich contends that the warrantless seizure of the car from his driveway is a clear violation of the Fourth Amendment's prohibition against unreasonable seizures. He says that the car was located within the curtilage of the home at the time, and a warrant was required to impound the car under the circumstances presented to the defendants. The defendants counter that the car was not located within the curtilage of the home according to the factors defining the boundaries of that zone under the controlling case law, and because the defendant officers lawfully were present in the driveway area where they found the vehicle, the seizure of the car that was identified

as having been involved in a suspected crime was allowed under the automobile and plain view exceptions to the warrant requirement.

It is well settled that the Fourth Amendment prohibits "unreasonable searches and seizures," and that in most instances, a search is unreasonable "if it is not conducted pursuant to a warrant issued upon probable cause." *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018) (quoting U.S. Const. amend. IV; citing *Camara v. Municipal Court of City & County of San Francisco*, 387 U.S. 523, 528-29 (1967)). An exception to the warrant requirement is found in the plain view rule, which states that a police officer may seize an item when "the incriminating character of the object is immediately apparent," but only if "the officer is lawfully positioned in a place from which the object can be plainly viewed," and "the officer has a lawful right of access to the object itself." *United States v. Bishop*, 338 F.3d 623, 626 (6th Cir. 2003).

1. Right of Access

Habich contends that the sheriff deputies had no right to inspect and then seize without a warrant his car from the driveway adjacent to his home. Foremost among a person's space protected by the Fourth Amendment is his home, *Collins v. Virginia*, --- U.S. ---, 138 S. Ct. 1663, 1670 (2018) ("'[W]hen it comes to the Fourth Amendment, the home is first among equals.'") (citation omitted), "and seizures inside a home without a warrant are presumptively unreasonable," *Payton v. New York*, 445 U.S. 573, 585-86 (1980) (quotations omitted).

And the right of an individual to be free of unreasonable governmental intrusion does not end at the four walls of his house. The Supreme Court "considers curtilage — 'the area immediately surrounding and associated with the home' — to be 'part of the home itself for Fourth Amendment purposes.'" *Collins*, 138 S. Ct. at 1670 (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013); *Oliver v. United States*, 466 U.S. 170, 180, 104 (1984)). "'The protection afforded the

curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened.'" *Ibid.* (quoting *California v. Ciraolo*, 476 U.S. 207, 212-213 (1986)). "When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred. Such conduct thus is presumptively unreasonable absent a warrant." *Ibid.* (citing *Jardines*, 569 U.S. at 11).

The "plain view" exception does not permit a warrantless seizure of property situated within the "curtilage," even where officers are able to see and perceive the contraband or evidentiary quality of the item from outside that protected zone. *Id.* at 1673 n.3 (2018) ("Law enforcement officers need not shield their eyes when passing by a home on public thoroughfares, but the ability visually to observe an area protected by the Fourth Amendment does not give officers the green light physically to intrude on it. It certainly does not permit an officer physically to intrude on curtilage . . . ."). Nor would the automobile exception, also referenced by the defendants, provide an excuse for a seizure without a warrant if the car were located within the curtilage of Habich's home. *Id.* at 1671 ("Virginia asks the Court to expand the scope of the automobile exception to permit police to invade any space outside an automobile even if the Fourth Amendment protects that space. Nothing in our case law, however, suggests that the automobile exception gives an officer the right to enter a home or its curtilage to access a vehicle without a warrant.").

At oral argument, the plaintiff agreed that the question on which this case turns is whether the car in fact was within the curtilage when it was inspected and impounded. In light of *Collins*, it appears at first glance that Habich has a winning case. In *Collins*, the Supreme Court determined that a motorcycle in the petitioner's driveway was within the curtilage of his home, rendering the

warrantless entry and inspection by police officers unlawful under the Fourth Amendment. But there, that part of the driveway where the motorcycle sat was past the front perimeter of the home, it was enclosed on two sides by a brick wall and on the third side by the home itself, it was not on the way to the front door of the residence, and the motorcycle was covered by a tarp. 138 S. Ct. at 1670-71. Upon closer examination of the facts in this case, it is clear that the driveway area where the vehicle was found and seized did not constitute "curtilage" of the home according to the boundaries of that zone as they have been defined by controlling circuit and Supreme Court law.

The Sixth Circuit has explained that "*Collins* held that the automobile exception does not allow for a warrantless search of a car parked within a home's curtilage, but it did not hold that all driveways are considered part of the curtilage." *Alberts v. Perry*, No. 21-5151, 2021 WL 6503902, at *3 (6th Cir. Oct. 5, 2021), *cert. denied*, 142 S. Ct. 1384 (2022) (citing *United States v. Coleman*, 923 F.3d 450, 456 (6th Cir. 2019)). Moreover, in pre-*Collins* cases on all fours with the facts here, *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011); *United States v. Estes*, 343 F. App'x 97, 101 (6th Cir. 2009), the court of appeals held that no Fourth Amendment violation occurred when officers seized items and searched vehicles located in driveway areas adjacent to a home. The Sixth Circuit expressly "has recognized that *Galaviz* and *Estes* . . . survive *Collins*." *Alberts*, 2021 WL 6503902, at *3.

The Sixth Circuit has "identified four factors as a guidepost to determining whether an individual has a reasonable expectation of privacy in an area, placing it within the home's curtilage: (1) proximity to the home; (2) whether the area is within an enclosure around the home; (3) uses of the area; and (4) steps taken to protect the area from observation by passersby." *United States v. Coleman*, 923 F.3d 450, 455 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 580 (citing *United States v. Dunn*, 480 U.S. 294, 301 (1987)). In this case, only the first factor — proximity to the home —

favors a finding that the driveway area where the car was parked comprised the curtilage of the home. But the cases on point hold that proximity is not enough to establish invasion of the curtilage, where other factors weigh against such a finding.

It is undisputed that the car was parked close to and beside a side wall of the home, behind the front (street-facing) aspect of the structure. The seizure of the vehicle from such close proximity to the home without a warrant is troubling on its face. However, the similarity with the facts of *Collins* ends there, and proximity alone is not enough to define the boundaries of the home's curtilage. The undisputed facts that distinguish this case from *Collins* include (1) the absence of a wall or enclosure shielding the parking area from passersby in the public roadway, (2) the vehicle was not covered or in any way obscured from public view, (3) the "usage" of the area for parking and working on vehicles, and (4) that the persons entering the home would pass through the same vicinity to access the entrance door.

These distinguishing features were present in the cases that "survive[d] *Collins*," as the Sixth Circuit explained in *United States v. Coleman*, 923 F.3d 450 (6th Cir. 2019). Discussing *Galaviz* and *Estes*, the court explained that "[b]oth cases involved driveways with similar characteristics to the one here: adjacent to a home, not enclosed, abutting a sidewalk or alley, with no steps taken to obstruct the view of passersby. In both instances, this court held that the officers did not intrude upon the building's curtilage by entering the driveway." *Id.* at 456. As a result, the court found that three of the four factors from *Dunn* "undercut" a conclusion that the driveway was within the respective homes' curtilage. *Id.* at 457.

These same undercutting factors map onto the undisputed facts in this case. Habich's driveway "area was not closed," he "had not taken any steps to protect the area from observation by people passing by," and the path from the front sidewalk up the driveway "was used as a point

of entry into the residence." *Ibid.* (quoting *Estes*, 343 F. App'x at 101). Similarly, Habich's "driveway was directly adjacent to the house," the part of the driveway where the car was located "was not enclosed by a fence or other barrier," and Habich had taken "no apparent steps . . . to protect the driveway from observation by passersby." *Ibid.* (quoting *Galaviz*, 645 F.3d at 356). Habich admitted at his deposition that the entrance to the home was on the side where the car was parked, adjoining the driveway, and that in August 2020 there was "no door" on the street-facing aspect of the house. Habich dep., ECF No. 41-2, PageID.678-79. The plaintiff also acknowledged that when, for example, packages were delivered to the home, they would be left near that principal entrance, which was in the area of the driveway where the car was parked. *Id.* at PageID.679. As the *Estes* case recognized, areas adjoining a principal entrance to the home are *not* customarily regarded as "curtilage."

Because the area where the car was located was not "curtilage" of the home as that zone has been defined by the Sixth Circuit's cases, the officers lawfully were present in that area when they approached the vehicle to inspect it and converse with Habich.

2. Readily Apparent Incriminating Nature of the Car

Although the police officers' entry into driveway did not intrude into a protected space, their warrantless seizure of the car cannot be justified under the "plain view" exception to the warrant requirement unless the "incriminating character" of the car also was "immediately apparent." *Galaviz*, 645 F.3d at 355. "The 'incriminating nature' of a piece of property is only 'immediately apparent' when a police officer has probable cause to believe that the property may be 'evidence of a crime.'" *Bullman v. City of Detroit*, 787 F. App'x 290, 301 (6th Cir. 2019) (quoting *Arizona v. Hicks*, 480 U.S. 321, 326 (1987); *Horton v. California*, 496 U.S. 128, 136 (1990)).

In this case, there was ample information available to the police, which is not materially disputed by the plaintiff, that suggested that the vehicle was itself and was likely to contain evidence of a crime. Because they had lawful access to the car, and its incriminating character was apparent to officers on the scene, the warrantless seizure was justified.

As an initial matter, the plaintiff does not dispute now — and never has denied — that he was involved in an early morning encounter with Washtenaw County Sheriff Corporal Spaulding, during which he activated flashing lights attached to the vehicle, in an attempt to goad Spaulding to "back off" while following him. It is undisputed that under Michigan Law "[t]he use or possession of flashing, oscillating, or rotating lights of any color is prohibited" on any private motor vehicle, except where used for authorized emergency and law enforcement purposes, or subject to other exceptions for which the plaintiff has never suggested that he had any valid authorization. *See* Mich. Comp. Laws § 257.698(5).

"An 'officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution' to believe that 'contraband or evidence of a crime is present.'" *United States v. Carrender*, No. 21-5253, 2022 WL 684396, at *2 (6th Cir. Mar. 8, 2022) (quoting *Florida v. Harris*, 568 U.S. 237, 243 (2013)). The appropriate measure of certainty is "only a 'fair probability' upon which 'reasonable and prudent' people would act." *Ibid.* (quoting *Illinois v. Gates*, 462 U.S. 213, 231, 238 (1983)). Corporal Spaulding's narrative of the roadway incident provided probable cause for a conclusion that the plaintiff had violated the motor vehicle code by possessing and using on a public roadway the flashing lights which he admits were attached to his vehicle. Those same circumstances plainly made out the incriminating nature of the car when it later was found by officers parked at the plaintiff's residence. Moreover, it is

undisputed, and the plaintiff admits, that he was the person driving the car during the encounter, and that it was the subject vehicle that Corporal Spaulding spotted and followed.

Defendant Wojciechowski testified that he identified the plaintiff's car as the vehicle that was involved in the roadway encounter when he saw it parked at the plaintiff's home. First, the officers observed, and it is undisputed, that the car was the same make, model, and color as the suspect vehicle. Second, from the public street the officers saw that the car was equipped with a distinctive "push bar" and "police-style lights." Wojciechowski dep., ECF No. 40-3, PageID.460 ("There's a push bar with what appeared to be an emergency light on it, in the grille between the push bar, there was emergency — what appeared to be emergency lights, and through the windshield it looked like it had a light bar on it."). Third, when the officers approached Habich and informed him about their investigation of the car's use, he admitted that he and his vehicle were involved in the encounter with Corporal Spaulding. *Id.* at PageID.464, 460, 462. The confirmation of the vehicle registration further bolsters the probable cause determination. *United States v. Vance*, No. 20-5819, 2021 WL 5133250, at *5 (6th Cir. Nov. 4, 2021) ("Based upon what the officers knew about the license plate and VIN alone, the officers could seize the vehicle without a warrant because they 'certainly had probable cause to believe that the vehicle itself was contraband.'"), *cert. denied*, No. 21-7355, 2022 WL 1131502 (U.S. Apr. 18, 2022) (quoting *Florida v. White*, 526 U.S. 559, 565 (1999)).

The plaintiff contends that information memorialized by Corporal Spaulding is "irrelevant" to the assessment of the incriminating character of the vehicle, because defendant Wojciechowski admitted that he "never read" Spaulding's incident report. However, it is well settled that an officer who acts on the directive of a fellow officer to "be on the lookout" for suspect persons or vehicles does not act unlawfully by seizing the person or item sought, notwithstanding whether he

personally was fully informed of the basis of suspicion, as long as the officer who issued the directive to search had in mind an adequate basis of probable cause. "[A]s the Supreme Court explained in *United States v. Hensley*, 469 U.S. 221 (1985), 'effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.'" *Humphrey v. Mabry*, 482 F.3d 840, 848-49 (6th Cir. 2007) (quoting *Henley*, 469 U.S. at 221) *see also ibid.* ("[A]lthough the officer who issues a wanted bulletin must have a reasonable suspicion sufficient to justify a stop, the officer who acts in reliance on the bulletin is not required to have personal knowledge of the evidence creating a reasonable suspicion."). The plaintiff takes issue with certain aspects of Corporal Spaulding's narrative of the roadway incident. However, he admits that he activated the flashing lights on the vehicle during that encounter. As discussed above, that was sufficient to supply probable cause to believe the car was involved in a crime that was witnessed first-hand by Spaulding.

Sergeant Brian Glatfelter testified that he reviewed Corporal Spaulding's report and relied on information recited in it when he directed defendant Wojciechowski to try to locate the suspect vehicle. Brian Glatfelter dep., ECF No. 41-3, PageID.682 ("I read Corporal Spaulding's report and I knew that, according to his report, he was on his way to work and an incident occurred and he had tried to locate a specific vehicle and he was unable to. Q. When it ended up on your desk, what action, if any, did you take? A. I tasked Corporal Wojciechowski, because that's one of his specialties is to track stuff down, so I asked him if he could see if he could locate the vehicle."). The defendants' reliance on that BOLO directive issued by Sergeant Glatfelter was in conformance with Fourth Amendment principles, and the defendants' assessment of the incriminating character

of the vehicle based on information that was communicated to them justified the warrantless seizure of the car. *Hensley*, 469 U.S. at 231 ("[W]hen evidence is uncovered during a search incident to an arrest in reliance merely on a flyer or bulletin, its admissibility turns on whether the officers who issued the flyer possessed probable cause to make the arrest. It does not turn on whether those relying on the flyer were themselves aware of the specific facts which led their colleagues to seek their assistance.").

The record undisputedly establishes that the incriminating nature of the vehicle was readily apparent to the deputies when they observed it from their lawful vantage point.

3. Search of the Car's Contents

Habich also challenges the search of the vehicle itself and seizure of items found in it. However, because the seizure of the vehicle was justified under the plain view exception, it follows that the search of the car's contents also was justified under the automobile exception to the warrant requirement. "A warrantless search is generally unreasonable," but "the 'automobile exception' permits a warrantless search of a vehicle when an officer has 'probable cause to believe the vehicle contains contraband or evidence of criminal activity.'" *United States v. Carrender*, No. 21-5253, 2022 WL 684396, at *2 (6th Cir. Mar. 8, 2022) (citing *Baranski v. Fifteen Unknown Agents of the BATF*, 452 F.3d 433, 438 (6th Cir. 2006); *United States v. Alexander*, 954 F.3d 910, 917 (6th Cir. 2020)). "This exception extends to compartments and containers within the vehicle that may hold the suspected evidence." *Ibid.* (citing *United States v. Ross*, 456 U.S. 798, 823-24 (1982)).

The deputies announced their intention to impound the car. They did not search the interior and the trunk until Habich asked for permission to remove some property. They then searched the car as part of the impound process. Nevertheless, "[w]here probable cause exists, officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police

custody"; the application of this rule does not "depend upon a reviewing court's assessment of the likelihood that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant. Only probable cause is required because the 'automobile exception' has no separate exigency requirement." *Vance*, 2021 WL 5133250, at *4 (quoting *Michigan v. Thomas*, 458 U.S. 259, 261 (1982); *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999)) (cleaned up). The officers' observations of prohibited flashing lights attached to the vehicle, which previously had been witnessed in use on a public roadway by Corporal Spaulding, supplied sufficient probable cause to search the vehicle for other evidence of the same and related criminal conduct, particularly since the car was observed to have a computer and video recording equipment installed which reasonably could be believed to contain records of the vehicle's illegal use.

B. Fourteenth Amendment Claim

Habich's Fourteenth Amendment claim is premised on the idea that the seizure of the car was procedurally deficient and contrary to certain state regulations. To prevail on this procedural due process claim, Habich must show that "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)). "Although property rights are protected by the U.S. Constitution, they are created by applicable state and local law. Specifically, property rights 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Lee v. City of Chicago*, 330 F.3d 456, 469 (7th Cir. 2003) (quoting *Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

Habich cannot proceed on a procedural due process claim because state law expressly authorized the impoundment of the vehicle to preserve evidence of a suspected crime, and Habich therefore had no recognized property right in its retention under the circumstances. The State of Michigan expressly authorizes the seizure of a vehicle that may contain or constitute evidence of a crime. Mich. Comp. Laws § 257.252d (statutory language quoted earlier). Habich cannot establish that he had a state-created right to retain the vehicle where pertinent state law expressly authorized the seizure.

At some point, Habich may have had a valid claim if there was an unreasonable refusal to return the car once its investigatory or evidentiary value was exhausted, even if it was held under the authority of a post-seizure warrant. *Lathon v. City of St. Louis*, 242 F.3d 841, 843 (8th Cir. 2001). But the alleged failures to conform with state regulations governing impoundment or "forfeiture" cannot, as a matter of law, sustain any claim of federal constitutional violations. Habich has not alleged that he availed himself of available legal process to seek return of the vehicle from the prosecuting authorities and was denied relief, and federal courts generally have held that no viable Fourteenth Amendment claim is made out where it is alleged merely that some contraband item was seized and held pending forthcoming criminal charges. *Ochner v. Stedman*, 572 F. App'x 143, 147 (3d Cir. 2014) (affirming dismissal of 1983 claim for return of impounded vehicle where civil action was filed while criminal proceedings and a motion for return of property were pending in state court). "'The general rule is that seized property, *other than contraband*, should be returned to the rightful owner *after the criminal proceedings have terminated*.'" *United States v. Ford*, No. 15-023, 2017 WL 6564065, at *1 (W.D. Ky. Dec. 21, 2017) (quoting *Sovereign News Co. v. United States*, 690 F.2d 569, 577 (6th Cir. 1982)) (emphasis added). "However, the person seeking return of property must show that *they are lawfully entitled to possess it*," and

"*[w]hen the government has a continuing interest in the property*, the property does not have to be returned." *Ibid.* (quoting *United States v. Headley*, 50 F. App'x 266, 267 (6th Cir. 2002); *United States v. Popham*, 382 F. Supp. 2d 942, 955 (E.D. Mich. 2005)). In this case, a criminal prosecution has been commenced and apparently has not yet terminated, and the state previously asserted an ongoing interest in keeping the vehicle as evidence for the criminal proceedings. Moreover, there is at least an open question, yet to be addressed by the state courts, about whether Habich ever had a legitimate "right to possess" the subject vehicle equipped with illegal flashing lights.

Furthermore, to prevail on a claim of defective *post*-deprivation process, Habich must bring forth facts plausibly suggesting that the available procedures are inadequate to protect his rights. He has made no such allegations here. It appears to be undisputed that he made no effort to retrieve the vehicle before filing suit in this case, other than making a single unreturned phone call. It is well recognized that Michigan courts do provide procedural avenues for persons whose property is seized under a search warrant to seek return of the items. *See* Mich. Comp. Laws § 600.6419(1)(a) (conferring jurisdiction on the court of claims to hear suits against the State and its agencies to recover property); *Winquist v. Macomb County Sheriff*, No. 15-13234, 2016 WL 3900781, at *6 (E.D. Mich. June 20, 2016), *R&R adopted*, 2016 WL 3878458 (E.D. Mich. July 18, 2016) (finding post-deprivation remedies adequate to satisfy due process where "Michigan courts have recognized that the circuit court that presided over a criminal proceeding has ancillary jurisdiction to consider a post-judgment motion to return certain property seized by the police during a search") (citing *In re Property Held by City of Detroit*, 141 Mich. App. 302, 367 N.W.2d 376 (1985); *People v. Washington*, 134 Mich. App. 504, 351 N.W.2d 577 (1984); *Pomann, Callanan & Sofen, P.C. v. Wayne County Dep't of Soc. Servs.*, 166 Mich. App. 342, 419 N.W.2d

787 (1988)). Where such post-deprivation procedures readily are available, the Fourteenth Amendment is no remedy for plaintiffs who made no effort to redeem the property through those avenues. *Ochner*, 572 F. App'x at 149.

Finally, the Sixth Circuit, confronting similar allegations of vehicle seizures followed by interminable delays in the institution of forfeiture proceedings, has been skeptical that mere allegations of months or even years of delays, without further detailed facts describing a supposed "policy" of pursuing constitutionally unsound seizure proceedings, can support any plausible claim for municipal liability under section 1983. In this case, for all of the reasons discussed above, the initial seizure was not constitutionally flawed. The mere allegation of undue delay in return of the vehicle is not sufficient, in light of the other undisputed facts in the record, to make out any viable Fourteenth Amendment claim. *See Nichols v. Wayne County*, 822 F. App'x 445, 452 (6th Cir. 2020).

Habich attempts to sidestep the deficiency of his Fourteenth Amendment claim by arguing that other available procedures for recovering the car do not preclude his civil action from going forward for damages due to the allegedly unlawful seizure. That position is correct, so far as it goes. *See Davis, v. Wayne County*, No. 20-11819, 2020 WL 7353475, at *5 (E.D. Mich. Dec. 15, 2020) ("While exhaustion of state remedies is 'not a prerequisite to the bringing of a § 1983 claim in federal court,' the 'necessity of proving the inadequacy of state remedies in some § 1983 claims is a species of the ripeness doctrine.'") (quoting *Macene v. MJW, Inc.*, 951 F.2d 700, 703 (6th Cir. 1991)). But because Habich had no legal right to regain immediate possession of the car under state law, and there is no apparent basis for a finding that he has been denied appropriate relief upon a proper request for its return (which now has been accomplished), he faces an insurmountable obstacle to the prospect of success on the procedural due process claim. *Hardick*

*v. City of Detroit*, 876 F.3d 238, 247 (6th Cir. 2017) ("[T]he City has not yet denied the plaintiffs due process. Any constitutional violation 'is not complete unless and until the State fails to provide due process.'").

* * * * *

Because the undisputed facts demonstrate that Habich cannot prevail on his constitutional claims, the defendants are entitled to summary judgment of dismissal as a matter of law.

III. Renewed Motion to Stay the Case

The defendants have renewed their motion to stay the proceedings to await the outcome of a now-pending criminal prosecution of the plaintiff for his allegedly unlawful use of the vehicle in question. There is no question that the Court has the authority to grant such relief. *FTC v. EMA Nationwide, Inc.*, 767 F.3d 611, 626-27 (6th Cir. 2014). However, "[a] stay of civil proceedings due to a pending criminal investigation is an extraordinary remedy," and "there is no requirement that a civil proceeding be stayed pending the outcome of criminal proceedings." *Id.* at 627. Several factors guide the decision: the extent of overlapping issues, whether the investigation has proceeded to indictment, the plaintiff's interest in proceeding "expeditiously" and the prejudice that could result in not doing so, the relative burdens on the defendant, and the interests of the courts and the public. *Ibid.*

These factors do not favor a stay. The issues may overlap, especially if Habich would file a suppression motion in the now-charged criminal case. But the criminal case focuses on conduct that took place at times other than the date that the car was seized from Habich's driveway, and a warrant was obtained later to search the car's contents. The defendants insist that this case would interfere with the prosecution. But that argument appears to be based on the notion that a civil plaintiff may use the case to circumvent and override criminal discovery rules. Here, discovery is

closed. The defendants also contend that the state courts should have first crack at deciding any Fourth Amendment issues that the case might present. But they have cited no authority that establishes such an order of battle. The prejudice to the plaintiff that would be caused by putting the case on hold until the State completes its prosecution outweighs the defendants' competing interests in delaying the civil action, especially considering the outcome of the dispositive motions. And the public interest and the interest of the Court in efficient proceedings do not favor a stay of the case, principally because there is no anticipated timeline for a final resolution of the criminal case, which reportedly is only in its nascent stages.

The renewed motion to stay this case will be denied.

IV.

There are no good grounds to delay resolution of the case. The facts in the record, viewed in the light most favorable to the plaintiff, do not establish a viable basis for either the Fourth or Fourteenth Amendment claims.

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment (ECF No. 41) is **GRANTED** and the plaintiff's motion for partial summary judgment (ECF No. 40) is **DENIED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the defendants' renewed motion to stay the case (ECF No. 49) is **DENIED**.

It is further **ORDERED** that the plaintiff's motion for enlargement of time to substitute a successor party for the deceased defendant (ECF No. 53) is **DENIED as moot**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: May 18, 2022